IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

Adrian Manigo,                          )         C/A No. 0:13-3185-BHH-PJG
                                        )
                    Plaintiff,          )
                                        )
v.                                      )         **REPORT AND RECOMMENDATION**
                                        )
Carolyn W. Colvin, Acting Commissioner  )
of Social Security,                     )
                                        )
                    Defendant.          )
_____ )

        This social security matter is before the court for a Report and Recommendation pursuant

to Local Civil Rule 83.VII.02 DSC.  The plaintiff, Adrian Manigo, brought this action pursuant to

42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final decision of the defendant,

Acting Commissioner of Social Security ("Commissioner"), denying his claims for Disability

Insurance Benefits ("DIB") and Supplemental Security Income ("SSI").  Having carefully considered

the parties' submissions and the applicable law, the court concludes that this matter should be

affirmed.

### SOCIAL SECURITY DISABILITY GENERALLY

        Under 42 U.S.C. § 423(d)(1)(A), (d)(5) and § 1382c(a)(3)(H)(i), as well as pursuant to the

regulations formulated by the Commissioner, the plaintiff has the burden of proving disability, which

is defined as an "inability to do any substantial gainful activity by reason of any medically

determinable physical or mental impairment which can be expected to result in death or which has

lasted or can be expected to last for a continuous period of not less than 12 months."  20 C.F.R.

§§ 404.1505(a), 416.905(a); see also Blalock v. Richardson, 483 F.2d 773 (4th Cir. 1973).  The

regulations require the ALJ to consider, in sequence:

(1)    whether the claimant is engaged in substantial gainful activity;

(2)    whether the claimant has a "severe" impairment;

(3)    whether the claimant has an impairment that meets or equals the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"), and is thus presumptively disabled;

(4)    whether the claimant can perform his past relevant work; and

(5)    whether the claimant's impairments prevent him from doing any other kind of work.

20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).[1]  If the ALJ can make a determination that a claimant is or is not disabled at any point in this process, review does not proceed to the next step.  Id.

Under this analysis, a claimant has the initial burden of showing that he is unable to return to his past relevant work because of his impairments.  Once the claimant establishes a *prima facie* case of disability, the burden shifts to the Commissioner.  To satisfy this burden, the Commissioner must establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience, and impairments, to perform alternative jobs that exist in the national economy.  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(A)-(B); see also McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983); Hall v. Harris, 658 F.2d 260, 264-65 (4th Cir. 1981); Wilson v. Califano, 617 F.2d 1050, 1053 (4th Cir. 1980).  The Commissioner may carry this burden by obtaining testimony from a vocational expert.  Grant v. Schweiker, 699 F.2d 189, 192 (4th Cir. 1983).

---

[1] The court observes that effective August 24, 2012, ALJs may engage in an expedited process which permits the ALJs to bypass the fourth step of the sequential process under certain circumstances.  20 C.F.R. §§ 404.1520(h), 416.920(h).



## ADMINISTRATIVE PROCEEDINGS

In July 2010, Manigo applied for DIB and SSI, alleging disability beginning July 18, 2009. Manigo's applications were denied initially and upon reconsideration, and he requested a hearing before an administrative law judge ("ALJ"). A hearing was held on June 15, 2012, at which Manigo, who was represented by Eleanor Swierk, a non-attorney representative, appeared and testified. After hearing testimony from a vocational expert, the ALJ issued a decision on August 6, 2012 denying benefits and concluding that Manigo was not disabled. (Tr. 18-29.)

Manigo was born in 1977 and was thirty-two years old at the time of his alleged disability onset date. (Tr. 143.) He has a tenth grade education and past relevant work experience as a concrete finisher. (Tr. 183.) Manigo alleged disability due to a gun shot wound to his left leg, scoliosis, a hole in his ACL, bad back, limited mobility, and chronic pain. (Tr. 182.)

In applying the five-step sequential process, the ALJ found that Manigo had not engaged in substantial gainful activity since July 18, 2009—his alleged onset date. The ALJ also determined that Manigo's history of a gunshot wound to the left leg, obesity, depressive disorder, and conversion disorder were severe impairments. However, the ALJ found that Manigo did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (the "Listings"). The ALJ further found that Manigo retained the residual functional capacity to

> perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except the claimant cannot climb ladders, ropes, or scaffolds, but can occasionally perform the other postural movements, can do frequent reaching, handling, fingering, and feeling, must avoid even moderate exposure to hazards, and requires a cane for ambulation. He must avoid concentrated exposure to respiratory irritants and can perform tasks that do not require constant speech. The claimant is limited to simple, routine, repetitive tasks in a low stress work environment, meaning no production-paced work and minimal decision-making.



(Tr. 22.)  The ALJ found that Manigo was unable to perform any past relevant work, but that there were jobs that existed in significant numbers in the national economy that Manigo could perform. Therefore, the ALJ found that Manigo was not disabled from July 18, 2009 through the date of his decision.

Manigo appealed the ALJ's decision to the Appeals Council, which denied his request for review on September 19, 2013 making the decision of the ALJ the final action of the Commissioner. (Tr. 1-4.)  This action followed.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), the court may review the Commissioner's denial of benefits. However, this review is limited to considering whether the Commissioner's findings "are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); see also 42 U.S.C. § 405(g); Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987).  Thus, the court may review only whether the Commissioner's decision is supported by substantial evidence and whether the correct law was applied.  See Myers v. Califano, 611 F.2d 980, 982 (4th Cir. 1980).  "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig, 76 F.3d at 589.  In reviewing the evidence, the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]."  Id. Accordingly, even if the court disagrees with the Commissioner's decision, the court must uphold it if it is supported by substantial evidence.  Blalock, 483 F.2d at 775.



## ISSUES

Manigo raises the following issues for this judicial review:

I.     The ALJ did not explain his findings regarding the Plaintiff's residual functional capacity, as required by Social Security Ruling 96-8p.

II.    The ALJ failed to properly assess medical opinion evidence[.]

III.   The ALJ failed to properly evaluate Manigo's Credibility[.]

(Pl.'s Br., ECF No. 18.)

## DISCUSSION

### A.    Residual Functional Capacity

A claimant's residual functional capacity is "the most [a claimant] can still do despite [his] limitations" and is determined by assessing all of the relevant evidence in the case record. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). In assessing residual functional capacity, an ALJ should scrutinize "all of the relevant medical and other evidence." 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). Social Security Ruling 96-8p further requires an ALJ to reference the evidence supporting his conclusions with respect to a claimant's residual functional capacity.

Manigo first argues that the ALJ erred in failing to properly consider his inability to frequently reach, handle, finger, and feel. Specifically, Manigo argues that although the ALJ stated that he gave Manigo the benefit of the doubt and limited him to frequent reaching, handling, fingering, and feeling, the ALJ's discussion in support of this finding is flawed. The ALJ observed that Manigo had reported numerous times to the emergency room for right facial droop and other right-sided weakness issues; however, the ALJ found that all testing for any possible cerebrovascular accident was normal, Manigo's EEG and MRI were normal, and his neurological examination was not consistent physiologically with right hemiparesis or the diagnosis of pseudobulbar palsy. Manigo

*OJG*

argues that the ALJ's reliance on these tests is misplaced or irrelevant.  He also argues that the ALJ failed to acknowledge several neurological examinations indicating symptoms of right-sided weakness.  (See Pl.'s Br. at 21-22, ECF No. 18 at 21-22) (citing medical records from October 2009 and December 2010 through June 2011 revealing decreased sensation, numbness, tingling, weakness on the right side, and right facial droop).  Additionally, Manigo summarily argues that the ALJ erred in failing to discuss Manigo's allegations of back pain, pointing out that Manigo was diagnosed with levoscoliosis with degenerative disc disease at L5-S1 and sciatica and that Manigo alleged a bad back with chronic pain in his Statement of Case prior to the hearing.

Upon review of the ALJ's decision and the record in this matter, the court disagrees.  As an initial matter, an ALJ is not required to specifically cite or discuss every piece of evidence in his decision to satisfy the requirements of SSR 96-8p.  See, e.g., Dyer v. Barnhart, 395 F.3d 1206, 1211 (11th Cir. 2005) (stating that the ALJ need not specifically refer to every piece of evidence in his decision, so long as the ALJ's decision is not a broad rejection rendering the court unable to conclude that the ALJ considered the claimant's medical condition as a whole); Craig v. Apfel, 212 F.3d 433, 436 (8th Cir. 2000) ("[A]n ALJ is not required to discuss all the evidence submitted, and an ALJ's failure to cite specific evidence does not indicate that it was not considered.").  Moreover, the ALJ found that Manigo's conversion disorder was a severe impairment.  The ALJ also discussed medical records from October 2009 and February through May 2011 that included reports of Bell's palsy, mild weakness of the right side of Manigo's face, parathesias and weakness of the right upper extremity, slurred speech, hearing loss in the right ear, and facial droop.  However, the ALJ also found that by March 2012, Manigo "reported that his symptoms of conversion continued to dissipate and his speech was normal and he was able to write better now." (Tr. 26.)  The ALJ concluded that the "[m]edical records indicate that with medication and mental health counseling, both his

depression and conversion symptoms have diminished." (Id.)  Accordingly, contrary to Manigo's arguments, the ALJ clearly considered Manigo's symptoms of right-sided weakness as part of his residual functional capacity assessment.  Moreover, despite the records indicating improvement, the ALJ stated that he gave Manigo the benefit of the doubt and "limited the claimant to only frequent reaching, handling, fingering, and feeling, but to avoid concentrated exposure to respiratory irritants and tasks that do not require constant speech.  Further, the claimant has been limited to simple, routine, repetitive tasks in a low stress work environment due to his depression and conversion disorder."  (Id.)

With regard to Manigo's allegations of back pain, the only evidence of record shows that any limitations from Manigo's back pain would have been accounted for by the ALJ's residual functional capacity assessment limiting Manigo to sedentary work with additional limitations that Manigo cannot climb ladders, ropes, or scaffolds, but can occasionally perform the other postural movements, can do frequent reaching, handling, fingering, and feeling, must avoid even moderate exposure to hazards, and requires a cane for ambulation.  (Tr. 22.)  Moreover, although Manigo speculates that his back pain decreases his range of motion, the opinion evidence that specifically considered this alleged impairment found that despite partially credible allegations of back pain and limited mobility, Manigo could occasionally lift fifty pounds, frequently lift twenty-five pounds, stand, walk, or sit for six hours in a normal workday, push and pull without restriction, frequently climb stairs or ladders, balance, stoop, kneel, crouch, and crawl, and occasionally climb ladders, ropes, or scaffolds. (Tr. 306-13.) The ALJ found that this opinion was entitled to significant weight, but giving Manigo the benefit of the doubt and accounting for his obesity, the ALJ further reduced Manigo's residual functional capacity.  (Tr. 27.)   Therefore, even if the ALJ erred in failing to specifically discuss Manigo's alleged back pain, Manigo cannot demonstrate any additional

limitations would be warranted from this alleged impairment that the ALJ has not already included in his residual functional capacity. See, e.g., Bishop v. Comm'r of Soc. Sec., No. 14-1042, 2014 WL 4347190, at *2 (4th Cir. Sept. 3, 2014) (applying the harmless error doctrine in the social security context and stating that "if the decision 'is overwhelmingly supported by the record though the agency's original opinion failed to marshal that support, then remanding is a waste of time' ") (quoting Spiva v. Astrue, 628 F.3d 346, 353 (7th Cir. 2010)).

Based on the foregoing and upon review of the record as a whole, the court finds that Manigo has not demonstrated that the ALJ's residual functional capacity analysis is unsupported by substantial evidence or controlled by an error of law. In compliance with SSR 96-8p, the ALJ provided an extensive narrative discussion, which included a full discussion of the medical and nonmedical evidence. The ALJ's discussion sufficiently demonstrates that he resolved the inconsistencies and ambiguities in the evidence, including Manigo's credibility and the opinion evidence. Accordingly, Manigo has failed to demonstrate that the ALJ failed to comply with the requirements of SSR 96-8p.

## B.    Dr. Judith Treadway

Manigo next argues that the ALJ improperly gave little weight to the opinion of Dr. Judith Treadway, Manigo's psychiatrist. Typically, the Social Security Administration accords greater weight to the opinion of treating medical sources because treating physicians are best able to provide "a detailed, longitudinal picture" of a claimant's alleged disability. See 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). However, "the rule does not require that the testimony be given controlling weight." Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992) (per curiam). Rather, a treating physician's opinion is evaluated and weighed "pursuant to the following non-exclusive list: (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the



applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist." Johnson v. Barnhart, 434 F.3d 650, 654 (4th Cir. 2005) (citing 20 C.F.R. § 404.1527). Any other factors that may support or contradict the opinion should also be considered. 20 C.F.R. §§ 404.1527(c)(6), 416.927(c)(6). In the face of "persuasive contrary evidence," the ALJ has the discretion to accord less than controlling weight to such an opinion. Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001). Further, " 'if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight.' " Id. (quoting Craig, 76 F.3d at 590).

Additionally, SSR 96-2p provides that

> a finding that a treating source medical opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 CFR 404.1527 and 416.927. In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.

SSR 96-2p, 1996 WL 374188, at *5. This Ruling also requires that an ALJ's decision "contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." Id., at *5.

By letter dated June 25, 2012, Dr. Treadway, the Psychiatric Services Chief for Coastal Empire Community MHC, indicated that Manigo has been diagnosed with Major Depressive Disorder-Recurrent (Moderate) and Conversion Disorder. Dr. Treadway stated that Manigo's use of the medication Celexa appears to have been somewhat sporadic. She also indicated that Manigo

began treatment with her mental health center in October 2011 "after a hospitalization at MUSC when neurological symptoms similar to that of a stroke were reportedly diagnosed as a conversion disorder." (Tr. 511.) Dr. Treadway stated that Manigo recently suffered a bereavement, and at his last appointment, Manigo's sleep was fair, appetite fine, affect eurythmic, and no suicidal ideation. She assessed a GAF score of 50. She opined that Manigo "would be extremely prone to stress in the workplace and likely to develop physical symptoms without clear explanation. He was doing fair at this time. I doubt he could work 8 hours a day, 5 days per week. He does not report current use of alcohol so I do not think this is relevant." (Id.)

The ALJ gave this opinion little weight, stating that "[t]he claimant has sought treatment with Dr. Treadway since October 2011, and treatment notes indicate that since beginning treatment, his condition had improved. By March 2012, it was noted that the claimant's symptoms of conversion disorder continued to dissipate, his speech was normal, and he was able to write better. (Exhibit 27F/6)." (Tr. 27.) Manigo argues that the ALJ's decision is unsupported because the record shows that Manigo's condition waxed and waned. Further, Manigo argues that Dr. Treadway's own opinion acknowledged that Manigo was doing fair at the time she issued the opinion and that the opinion was issued after the record that the ALJ cited for the improvement. Therefore, Manigo argues that this specialist's opinion was issued despite Manigo's improvement.

As an initial matter, the issue of whether a claimant is disabled or unable to work is reserved to the Commissioner and opinions by medical sources on that point are not entitled to special significance. See 20 C.F.R. §§ 404.1527(d), 416.927(d). Therefore, Dr. Treadway's opinion that she doubted Manigo could work eight hours day, five days a week without further explanation or support is not entitled to special significance. Moreover, as pointed out by the Commissioner, the

ALJ limited Manigo to "simple, routine, repetitive tasks in a low stress work environment, meaning no production-paced work and minimal decision-making." (Tr. 22.)

Upon review of the ALJ's decision and the record, the court concludes that the ALJ appears to have applied the relevant factors in evaluating Dr. Treadway's opinion and finds that Manigo has failed to demonstrate that his decision to afford little weight to Dr. Treadway's opinion is unsupported by substantial evidence. See 20 C.F.R. §§ 404.1527(c), 416.927(c); Mastro, 270 F.3d at 178 (stating that "if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight") (internal quotation marks and citation omitted). Similarly, to the extent that Manigo alleges that the ALJ impermissibly interpreted medical evidence in order to discount the opinions of Dr. Treadway, the court disagrees. It is clear from the ALJ's decision that the ALJ, as part of his duties in weighing the evidence, properly relied on medical evidence in making his residual functional capacity determination and resolving conflicts of evidence. Where the record contains conflicting medical evidence, it is the purview of the ALJ to consider and weigh the evidence, and resolve the conflict. See Craig, 76 F.3d at 589 (stating that the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]"); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990) (holding that it is the ALJ's responsibility, not the court's, to determine the weight of evidence and resolve conflicts of evidence). In this case, the ALJ noted that Manigo's treatment records and self-reports document that his condition had improved.

Further, contrary to Manigo's arguments, opinions from non-examining physicians, which in this case are opinions from state agency reviewers, can constitute substantial evidence in support of an ALJ's decision over the opinion of an examining physician so long as the opinions from the non-examining physicians are consistent with the record as a whole. See Smith v. Schweiker, 795



F.2d 343, 345-46 (4th Cir. 1986); Stanley v. Barnhart, 116 F. App'x 427, 429 (4th Cir. 2004) (disagreeing with the argument that the ALJ improperly gave more weight to residual functional capacity assessments of non-examining state agency physicians over those of examining physicians and finding that the ALJ properly considered evidence provided by those physicians in context of other medical and vocational evidence); see also 20 C.F.R. §§ 404.1527(e)(2)(i), 416.927(e)(2)(i) ("State agency medical and psychological consultants and other program physicians, psychologists, and other medical specialists are highly qualified . . . [and] are also experts in Social Security disability evaluation.  Therefore, administrative law judges must consider [their] findings and opinions as opinion evidence").  In evaluating the opinions from the state agency reviewers, the ALJ observed that the state agency reviewers "were non-examining, and therefore their opinions do not as a general matter deserve as much weight."  (Tr. 27.)  However, the ALJ found that

> the opinions of the medical consultants have been given significant weight as they
> are supported by the objective evidence of record, but the residual functional capacity
> has been reduced to sedentary exertional work in order to give the claimant the
> benefit of the doubt, and to incorporate obesity as a severe impairment.  (Exhibits 9F,
> 25F).  The opinions of the state agency psychological consultant has also been given
> great weight, as it gives the claimant the benefit of the doubt and reflect both his
> current treatment as well as the situational bereavement.  (Exhibit 24F).

(Id.)  Therefore, to the extent that Manigo argues that the ALJ erred in giving greater weight to these opinions over Dr. Treadway's opinion, the court finds this argument is insufficient to demonstrate that this portion of the ALJ's decision is unsupported by substantial evidence or controlled by an error of law.  Moreover, the court finds that, contrary to Manigo's apparent assertion, the ALJ's decision sufficiently reflects that he applied the requisite factors in weighing these opinions.

For all of these reasons, the court finds that Manigo has not shown that the ALJ's decision with regard to Dr. Treadway's opinion was unsupported by substantial evidence or reached through application of an incorrect legal standard.

C.    **Credibility**

Finally, Manigo argues that the ALJ erred in evaluating his subjective complaints.  In evaluating subjective complaints, the United States Court of Appeals for the Fourth Circuit has stated that "the determination of whether a person is disabled by pain or other symptoms is a two-step process." Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996).  It appears that in this matter only the second step is at issue,[2] during which the ALJ must expressly consider "the intensity and persistence of the claimant's [symptom] and the extent to which it affects [his] ability to work." Id. In making these determinations, the ALJ's decision "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p. "[A]llegations concerning the intensity and persistence of pain or other symptoms may not be disregarded *solely* because they are not substantiated by objective medical evidence." Id. (emphasis added).  "This is not to say, however, that objective medical evidence and other objective evidence are not crucial to evaluating the intensity and persistence of a claimant's pain and the extent to which it impairs [his] ability to work." Craig, 76 F.3d at 595.  A claimant's subjective complaints "need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the [symptoms] the claimant alleges []he suffers." Id.  The social security regulations inform

---

[2] The first step requires there to "be objective medical evidence showing the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged." Craig, 76 F.3d at 594 (internal quotation omitted).



claimants that in evaluating subjective complaints, the Commissioner will consider the following relevant factors:

(i)    Your daily activities;

(ii)   The location, duration, frequency, and intensity of your pain or other symptoms;

(iii)  Precipitating and aggravating factors;

(iv)   The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;

(v)    Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;

(vi)   Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and

(vii)  Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

In considering Manigo's credibility, the ALJ first summarized Manigo's testimony. In pertinent part, the ALJ observed that Manigo testified that he cannot work due to his physical problems. Manigo's testimony included allegations that his knee is so weak that he cannot put weight on it; he cannot stand for a long period of time; sitting is painful unless his legs are elevated; he lacks full strength in his right arm; and standing or walking for a long amount of time makes the pain worse. With regard to his mental disorders, the ALJ stated that Manigo testified that he does not know how to handle stress. (Tr. 23.)

The ALJ found that Manigo's statements concerning the intensity, persistence, and limiting effects of his alleged symptoms were not credible. In support of this finding, the ALJ first explained that "[t]reatment notes simply fail to indicate the level of dysfunction the claimant is alleging." (Id.) The ALJ discussed Manigo's treatment in July 2009 reporting a gunshot wound to the leg, including negative x-rays, physical examinations revealing good pulses and normal sensation with no signs of any distal problems, and the orthopaedic surgeon's indication that the gunshot wound would heal

uneventfully.  The ALJ discussed additional records from March and August 2010 where Manigo reported complaints of pain, and the ALJ noted some inconsistencies in Manigo's reports such as the location of the gunshot wound.  However, since August 2010, the ALJ found that Manigo "has not been seen or treated, or complained, of any pain or symptoms associated with his history of a gunshot wound to his left knee."  (Tr. 24.)  The ALJ further summarized Manigo's neurological consultative examination from May 2011, as well as emergency room records from February and April 2012 that noted "motor strength was normal and equal in all extremities, and his range of motion was intact in all extremities."  (Id.)  Therefore, with regard to Manigo's physical allegations, the ALJ concluded as follows:

> The claimant has been given the benefit of the doubt surrounding his symptoms and pain pertaining to the gunshot wound to his left knee in June 2009.  However, the claimant has the ability to perform sedentary exertional work.  The undersigned has further accounted for the claimant's complaints of pain and inability to ambulate effectively by limiting the claimant to occasional postural movements, except no climbing of ladders, ropes, or scaffolds, by avoiding jobs in which he would be even moderately exposed to hazards, and stated that he requires a cane for ambulation.  X-rays of the claimant's left knee were all normal, and the claimant has received limited medical treatment, and no medical treatment for his knee since August 2010.  In August 2010, the claimant reported that while he had been shot in his knee, he was doing fine.  (Exhibit 8F/2).  Further, during two emergency room visits in 2012 for unrelated complaints, physical examinations found his gait was normal, his motor strength was normal and equal in all extremities, and his range of motion was intact in all extremities.  (Exhibit 26F).

(Tr. 24-25.)[3]

The ALJ also discussed the records pertaining to Manigo's depressive disorder and his conversion disorder.  Importantly, the ALJ found that "[w]hile Manigo has received occasional

---

[3] The ALJ also specifically considered Manigo's obesity, but concluded it "has not had a negative effect upon his ability to perform routine movement beyond the very limited residual functional capacity stated above or upon his ability to sustain function over an eight-hour day."  (Tr. 26.)



treatment and counseling for his depression, his depression appears to be sporadic and related to bereavement." (Tr. 25.) Further, as discussed above, with regard to the conversion disorder, the ALJ discussed medical records from October 2009 and February through May 2011 that included reports of Bell's palsy, mild weakness of the right side of Manigo's face, parathesias and weakness of the right upper extremity, slurred speech, hearing loss in the right ear, and facial droop. However, the ALJ also found that by March 2012, Manigo "reported that his symptoms of conversion continued to dissipate and his speech was normal and he was able to write better now." (Tr. 26.) The ALJ concluded that the

> [m]edical records indicate that with medication and mental health counseling, both his depression and conversion symptoms have diminished. However, the claimant has been given the benefit of the doubt, and the undersigned has limited the claimant to only frequent reaching, handling, fingering, and feeling, but to avoid concentrated exposure to respiratory irritants and tasks that do not require constant speech. Further, the claimant has been limited to simple, routine, repetitive tasks in a low stress work environment due to his depression and conversion disorder.

(Id.)

Finally, the ALJ reiterated his findings and conclusions, stating that he "has evaluated the claimant's subjective complaints, but finds them to be exaggerated." The ALJ continued,

> [t]he claimant testified that he cannot stand for long, and that it was painful to sit unless his legs were elevated. However, he has a driver's license and drives a little. He is able to dress himself, take care of his personal hygiene, help his children with their homework and get to and from school, go shopping, visit with friends, and attend church every other week. Mental health treatment notes indicate that the claimant generally sustained GAF scores ranging from 50 to 60, indicating only mild-to-moderate symptoms. (Exhibit 27F). Additionally, the claimant just lost his wife a month before the hearing, so he is still suffering from bereavement. Additional mental health records indicate that the claimant is improving. During one session, the claimant reported that he realized his physical problems were psychological in origin. (Exhibit 27F/10). In March 2012, the claimant reported that he was staying busy remodeling his home, and realized that his physical symptoms

were all in his head. (Exhibit 27F/7). He also indicated that his symptoms of conversion continue to dissipate and his speech was normal and he was able to write better now. (Exhibit 27F/6).

(Tr. 26-27.)

Manigo first argues that in evaluating his credibility the ALJ did not comply with SSR 96-7p because he failed to discuss several examinations that "revealed right-sided weakness, right arm tremors, numbness, slow movement of the right hand, unsteady on his feet with loss of balance, decreased strength of the right upper and lower extremity, fine and gross motor coordination deficits, difficulties with activities of daily living, etc." (Pl.'s Br. at 31, ECf No. 18 at 31.) However, as explained above, an ALJ is not required to specifically cite or discuss every piece of evidence in his decision. See, e.g., Dyer v. Barnhart, 395 F.3d 1206, 1211 (11th Cir. 2005) (stating that the ALJ need not specifically refer to every piece of evidence in his decision, so long as the ALJ's decision is not a broad rejection rendering the court unable to conclude that the ALJ considered the claimant's medical condition as a whole); Craig v. Apfel, 212 F.3d 433, 436 (8th Cir. 2000) ("[A]n ALJ is not required to discuss all the evidence submitted, and an ALJ's failure to cite specific evidence does not indicate that it was not considered."). The court finds that Manigo cannot demonstrate that the ALJ failed to comply with SSR 96-7p as the ALJ's decision clearly reflects that he considered treatment records reflecting many of these observations in considering Manigo's impairments. (See, e.g., Tr. 26); SSR 96-7p (stating that the ALJ's decision "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight").

Manigo next argues, and the Commissioner concedes, that the ALJ erred in stating that GAF scores from 50 to 60 indicate only mild-to-moderate symptoms of depression. Manigo also appears



to challenge the ALJ's finding that his symptoms were improving by pointing to treatment records from March through October 2011 indicating signs of depression and GAF scores of 50; records from January 2012 indicating Manigo appeared depressed, had a problem with repressed anger, and had physical issues that involved stuttering and weakness; and Dr. Treadway's June 2012 letter stating that Manigo's latest GAF score was still 50.

With regard to GAF scores, the <u>American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders</u>, fourth edition ("DSM-IV"), contains a numeric scale (0 through 100) used to rate the severity of psychological symptoms and/or social, occupational, or school functioning. A GAF score may reflect the severity of symptoms or impairment in functioning at the time of the evaluation.[4] <u>Id.</u> at 32-33. According to the DSM-IV, a GAF score between 41 and 50 may reflect "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." <u>Id.</u> at 34. A GAF score between 51 and 60 may reflect "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers and co-workers)." <u>Id.</u> at 34. Importantly, a "[p]laintiff's GAF score is only a snapshot in time, and not indicative of [his] long term level of functioning." <u>Parker v. Astrue</u>, 664 F. Supp. 2d 544, 557 (D.S.C. 2009). The court finds that the ALJ's misstatement regarding the severity of symptoms that GAF scores between 50-60 represent to be harmless error. <u>See</u> <u>Minish v. Astrue</u>, C/A No. 1:12cv01, 2013 WL 1010437, at *4 (W.D.N.C. Mar. 14, 2013) (stating that a GAF score is "a subjective

---

[4] The court observes that the fifth edition of the DSM, published in 2013, has discontinued use of the GAF. <u>American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders</u>, 16 (5th ed. 2013) ("DSM-V").



determination that represents the clinician's judgment of the individual's overall level of functioning," but it is "not dispositive of anything in and of itself and has no direct legal or medical correlation to the severity requirements of social security regulations") (internal quotation marks and citations omitted); Beasley v. Astrue, No. 7:10-CV-232-FL, 2012 WL 707091, at *5 (E.D.N.C. Mar. 5, 2012) ("[N]either agency regulations nor case law requires an ALJ to determine the extent of a [plaintiff's] mental disability based entirely on GAF scores.") (citing Denton v. Astrue, 596 F.3d 419, 425 (7th Cir. 2010)). Notwithstanding this statement, the ALJ specifically considered the underlying treatment notes. Moreover, the court finds that Manigo's reliance on selective records demonstrating that Manigo has depression fails to demonstrate that the ALJ's finding that Manigo's symptoms were improving is unsupported by substantial evidence. Notably, the ALJ found Manigo's depressive disorder was a severe impairment and giving Manigo the benefit of the doubt limited him to "simple, routine, repetitive tasks in a low stress work environment."[5]  (Tr. 26.)

Manigo also appears to argue that the ALJ inaccurately summarized his activities of daily living, citing to evidence of more limited activities, and arguing that the ability to engage in some activities of daily living at his own pace does not constitute evidence that he could engage in work full time. As an initial matter, Manigo's activities were one of several reasons offered by the ALJ to discount his credibility. Moreover, upon review of the record, the court finds that Manigo has failed to demonstrate that the ALJ's finding that his activities of daily living—such as caring for his children, dressing and bathing himself, driving when necessary, visiting with a friend, and attending

---

[5] To the extent that Manigo argues that the ALJ erred in finding he was not credible by suggesting he was malingering, the court disagrees. The ALJ's opinion reflects that in discussing the medical records he recounted an earlier medical record that suggested that Manigo was evaluated for malingering before the conversion disorder diagnosis was actually made. However, the ALJ acknowledged the ultimate diagnosis for conversion disorder, found it to be a severe impairment, and assessed limitations on Manigo's residual functional capacity based on this impairment.



church—were inconsistent with his subjective complaints was unsupported by substantial evidence.

See Johnson v. Barnhart, 434 F.3d 650, 658 (4th Cir. 2005) (noting that a claimant's routine activities, including reading, cooking, exercising, attending church, cleaning house, washing dishes, doing laundry, and visiting, were inconsistent with her complaints).

Thus, viewing the ALJ's opinion and record as a whole, Manigo has failed to demonstrate that remand is warranted on this ground. The ALJ's decision sufficiently indicates that he considered the applicable factors in weighing Manigo's subjective complaints and Manigo's reliance on selective treatment records do not render the ALJ's decision unsupported by substantial evidence.

## RECOMMENDATION

For the foregoing reasons, the court finds that Manigo has not shown that the Commissioner's decision was unsupported by substantial evidence or reached through application of an incorrect legal standard. See Craig, 76 F.3d at 589; see also 42 U.S.C. § 405(g); Coffman, 829 F.2d at 517. The court therefore recommends that the Commissioner's decision be affirmed.

_____

November 12, 2014                        Paige J. Gossett
Columbia, South Carolina                 UNITED STATES MAGISTRATE JUDGE

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"   Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).